IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Brian L. Harm,                              )    CV 18-01072-PHX-JJT (MHB)
                                            )
              Petitioner,                   )    **REPORT AND RECOMMENDATION**
                                            )
vs.                                         )
                                            )
Charles Ryan, et al.,                       )
                                            )
              Respondents.                  )
                                            )
_____)

TO THE HONORABLE JOHN J. TUCHI, UNITED STATES DISTRICT COURT:

Petitioner Brian L. Harm, who is confined in the Arizona State Prison Complex, has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 13), and Petitioner has filed a Reply (Doc. 14).

**BACKGROUND**

Petitioner was convicted by a jury in Maricopa County Superior Court, case #CR 2012-140832, of threatening and intimidating, and was sentenced to a 12.5-year term of imprisonment.[1] The Arizona Court of Appeals described the facts of the case, as follows:

---

[1] Petitioner was indicted on "one count of threatening or intimidating 'by word or conduct ... [t]o cause physical injury to another person ... in order to promote, further or assist in the interests of ... a criminal street gang,' and one count of 'assisting a criminal street gang by committing any felony offense, whether completed or preparatory for the benefit of, at the direction of or in association with any criminal street gang.' Ariz.Rev.Stat. (A.R.S.) §§ 13–1202(A)(3)[] (threatening or intimidating), –2321(B) (assisting a criminal street gang)." State v. Harm, 340 P.3d 1110 (Ariz. Ct. App. 2015).

¶ 3 Shortly before 1:00 a.m. on August 2, 2012, law enforcement officers observed Harm attempting to force open the doors of a commercial building. A black police officer subsequently arrested him for trespassing, at which point, Harm launched into a verbal tirade against the officer, threatening him with violent retaliation by the Aryan Brotherhood, a white supremacist gang of which Harm implied he was a "known member." Harm was subsequently indicted.

¶ 4 At trial, defense counsel argued Harm was not, in fact, a member of the Aryan Brotherhood, and acted only to further his own ill-thought-out and short-sighted purposes. To undercut Harm's defense, the State offered into evidence statements Harm made to the officer during his arrest, as testified to by the arresting officer and partially captured in a forty-seven-minute audio recording, in which Harm was heard stating:

> I'm affiliated to the bone. I will have all my brotherhood brothers come to this neighborhood, and you'll pay the ultimate price.... This is going to start trouble with the A[ryan] B[rotherhood] in this town, brother and you ain't going to like it and your superiors ain't going to like it.... I'm a known member of the AB. I'm going to have a council over this.... You want to be a punk n[_____] cop, there's going to be some brothers looking for a punk n[_____] cop in the next few days.... I'm good at what I do, bro. I'm good in my organization.... I'm going to have as much shit done to you in your life because of what you just did to me in mine.... Our shit reaches as far as yours does, bro.

¶ 5 The State also presented expert testimony that Harm's declaration of membership and knowledge of the Aryan Brotherhood's inner workings were sufficient to establish Harm's membership in the gang. *See* A.R.S. § 13–105(9) (setting forth seven criteria indicative of street gang membership, including self-proclamation, witness testimony, and "[a]ny other indicia" of street gang membership not specifically listed). The expert further testified the number one goal of the Aryan Brotherhood is the promotion of fear and respect for the gang itself. Members or non-members can promote the gang by word of mouth, taking action on behalf of the gang, and instilling fear in potential victims. A member of the Aryan Brotherhood could gain respect for himself, and the gang, by threatening law enforcement, identified as the number one "rival" of the gang.

¶ 6 Following presentation of the State's evidence, Harm unsuccessfully moved for a judgment of acquittal, claiming the State's evidence was insufficient to support a conviction. The jury found Harm guilty only of threatening or intimidating "by word or conduct, ... [t]o cause physical injury to another person ... in order to promote, further or assist in the interests of ... a criminal street gang," a class 3 felony. A.R.S. § 13–1202(A)(3), (C).

¶ 7 Following the determination of guilt, the trial court proceeded to the aggravation phase. The State alleged four aggravating factors, including that the offense was committed "with the intent to promote, further or assist any criminal conduct by a criminal street gang." Although the court expressed concern as to whether that aggravator invoked double jeopardy concerns in light of Harm's acquittal of assisting a criminal street gang, all four aggravators were submitted to the jury. The jury found the State had proven

- 2 -

beyond a reasonable doubt that the offense "involved the infliction or threatened infliction of serious physical injury," "was a biased crime," and was committed "with the intent to promote further or assist any criminal conduct by a criminal street gang."[] Harm filed a motion for new trial, which was denied.

¶ 8 The trial court then sentenced Harm to a mitigated sentence of 12.5 years' imprisonment for threatening or intimidating, and determined Harm was not eligible for suspension of sentence or probation, based upon application of the proven aggravator that his conduct was committed with the intent to "promote, further or assist" a criminal street gang. A.R.S. § 13–714.

Harm, 340 P.3d 1112-14.

Petitioner filed a timely appeal arguing that there was insufficient evidence to support his conviction and, additionally, that enhancement of his sentence under A.R.S. § 13–714 violated double jeopardy where he was acquitted of assisting a criminal street gang. See id. The Arizona Court of Appeals rejected these claims and affirmed Petitioner's conviction and sentence.

As to the sufficiency of evidence claim, the court found that actual membership in a criminal street gang was not an element of the charge of threatening or intimidating, and therefore need not be proven to secure a conviction. Next, the court found that sufficient evidence was submitted for the jury to reasonably conclude beyond a reasonable doubt that Petitioner's threats were made to promote the interests of the Aryan Brotherhood in gaining respect through intimidation. See id. at 1114.

As to the enhancement of sentence claim, the court found that (1) the elements of the acquitted offense and the statutory enhancer were not identical, and were therefore not the "same offense" for purposes of a double jeopardy challenge; (2) the trial court's application of the statutory enhancer was consistent with the crime for which Petitioner was convicted; and (3) there was no double jeopardy violation resulting from use of the statutory enhancer. See id. at 1114-17.

Petitioner did not file a petition for review to the Arizona Supreme Court. The court dismissed the matter on April 1, 2015. (Exh. Q.)

On January 26, 2015, Petitioner filed a notice of PCR, and the state court appointed counsel. (Exhs. S, T.) Counsel, thereafter, filed a Notice of Completion stating that he

reviewed the record and "tenders a good faith belief that no basis in fact and/or law for post-conviction relief exists on this record." (Exh. U.) Counsel also requested an extension of time for Petitioner to file a pro per PCR petition.

On July 21, 2015, Petitioner filed a pro per PCR petition alleging the following claims (as construed by the Arizona Court of Appeals in its Memorandum Decision on Petitioner's petition for review): (1) the trial court erred when it failed to conduct a competency hearing sua sponte; (2) law enforcement officers obtained statements from him in violation of Miranda v. Arizona, 384 U.S. 436 (1966); (3) ineffective assistance of counsel when counsel failed to request a competency hearing; and (4) ineffective assistance of counsel when counsel failed to file a motion to suppress based on an alleged Miranda violation. (Exhs. X, Y, Z, AA, DD, EE, FF.)

On September 24, 2015, the state court issued an order denying Petitioner's PCR petition. (Exh. AA.)

Thereafter, Petitioner filed a petition for review in the Arizona Court of Appeals asserting the same claims he presented to the state court. (Exhs. DD, EE, FF.) On July 11, 2017, the court issued a Memorandum Decision granting review, but denying relief. (Exh. FF.) Petitioner did not seek review by the Arizona Supreme Court.

In his habeas petition, Petitioner names Charles Ryan as Respondent and the Arizona Attorney General as an Additional Respondent. Petitioner raises four grounds for relief. In Ground One, Petitioner contends the "trial court abused its discretion when it ruled that sufficient evidence existed that [Petitioner] threatened [the] officer in furtherance of criminal gang activity – one must be guilty beyond a reasonable doubt." In Ground Two, Petitioner claims double jeopardy attached to the "gang aggravator when the jury found [Petitioner] not guilty of assisting a criminal street gang." Petitioner asserts that he was found not guilty of "assisting a criminal street gang" and claims this is inconsistent with the verdict that he was guilty of "threatening and intimidating in order to assist, promote, or further the interests of a criminal street gang." In Ground Three, Petitioner contends he received ineffective assistance of counsel. In Ground Four, he appears to raise a claim regarding Martinez v.

Ryan, 566 U.S. 1 (2012), asserting that the issue of ineffective assistance of counsel "should have been brought on direct appeal – by [the] time it was allowed to be brought[, Petitioner] no longer had [the] assistance of Rule 32 counsel." (Doc. 1 at 6-9.)

In their Answer, Respondents argue that Ground Four is procedurally defaulted without an excuse for the default, and Grounds One, Two, and Three fail on the merits.

**DISCUSSION**

**A.    Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518

U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner

attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue

---

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. See Reed v. Ross, 468 U.S. 1, 9 (1984). The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective

- 8 -

factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson, 360 F.3d at 1052 (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

### 1.   Ground Four

In Ground Four, Petitioner complains pursuant to Martinez v. Ryan, 566 U.S. 1 (2012) that an ineffective assistance of counsel claim "should have been brought on direct appeal – by [the] time it was allowed to be brought[, Petitioner] no longer had [the] assistance of Rule 32 counsel." Apparently referring to the state's procedural rules, Petitioner contends that prohibiting him from presenting an ineffective assistance of counsel claim on direct appeal "severely diminishes" his ability to pursue a claim as he has no experience in the law. Petitioner appears to then allege that his PCR counsel was ineffective for failing to argue that his counsel on direct appeal was ineffective for not alleging an ineffective assistance of trial counsel claim on direct appeal.

Although his claim is not entirely clear, the record reflects that Petitioner failed to fairly present this claim (or any related claims) to the state courts. Failure to fairly present this claim has resulted in the procedural default of the claim because Petitioner is now barred from returning to state court. See Ariz.R.Crim.P. 32.2(a), 32.4(a), 32.9(c).

Although a procedural default may be overcome upon a showing of cause and prejudice or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750-51, Petitioner has not established that any exception to procedural default applies. Indeed, his brief reference to his status as an inmate, lack of legal knowledge, and limited legal resources do not establish cause to excuse the procedural default. See Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause). Accordingly, Petitioner has not shown cause for his procedural default.

Petitioner has also not established a fundamental miscarriage of justice. A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice." Schlup, 513 U.S. at 327. The standard for establishing a Schlup procedural gateway claim is "demanding." House v. Bell, 547 U.S. 518, 538 (2006). The petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Schlup, 513 U.S. at 316. Under Schlup, to overcome the procedural hurdle created by failing to properly present his claims to the state courts, a petitioner "must demonstrate that the constitutional violations he alleges ha[ve] probably resulted in the conviction of one who is actually innocent, such that a federal court's refusal to hear the defaulted claims would be a 'miscarriage of justice.'" House, 547 U.S. at 555-56 (quoting Schlup, 513 at 326, 327). To meet this standard, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. Petitioner has failed to establish, much less argue, a sufficient showing of actual innocence to establish a miscarriage of justice. Therefore, Petitioner cannot excuse his procedural defaults on this basis.

Petitioner appears to rely on Martinez. In Martinez, the Supreme Court created a "narrow exception" to the principle that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 566 U.S. at 9. The Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id.

"Cause" is established under Martinez when:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral review proceeding.

Trevino v. Thaler, 569 U.S. 413, 423, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013) (citing Martinez).

The Martinez exception applies only to the ineffectiveness of post-conviction counsel in the initial post-conviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." 566 U.S. at 16. Rather, Martinez is concerned that, if ineffective assistance of counsel claims were not brought in the collateral proceeding that provided the first occasion to raise such claims, then the claims could not be brought at all. See id. at 9-11. Therefore, a petitioner may not assert "cause" to overcome the procedural bar based on attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Id. at 16.

The Court must first address whether Petitioner has shown a "substantial" claim of ineffective assistance of counsel. A "substantial" claim "has some merit." Id. at 14. Like the standard for issuing a certificate of appealability, to establish a "substantial" claim, a petitioner must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate

to deserve encouragement to proceed further." Detrich v. Ryan, 740 F.3d 1237, 1245 (9ᵗʰ Cir. 2013) (internal quotations omitted). In other words, a claim is "'insubstantial' if it does not have any merit or is wholly without factual support." Id. Determining whether an ineffective assistance of counsel claim is "substantial" requires a district court to examine the claim under the standards of Strickland v. Washington, 466 U.S. 668 (1984).

To establish a claim of ineffective assistance of counsel a petitioner must demonstrate that counsel's performance was deficient under prevailing professional standards, and that he suffered prejudice as a result of that deficient performance. See id. at 687-88. To establish deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 699. A petitioner's allegations and supporting evidence must withstand the court's "highly deferential" scrutiny of counsel's performance, and overcome the "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 689-90. A petitioner bears the burden of showing that counsel's assistance was "neither reasonable nor the result of sound trial strategy," Murtishaw v. Woodford, 255 F.3d 926, 939 (9ᵗʰ Cir. 2001), and actions by counsel that "'might be considered sound trial strategy'" do not constitute ineffective assistance. Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To establish prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." Id. Courts should not presume prejudice. See Jackson v. Calderon, 211 F.3d 1148, 1155 (9ᵗʰ Cir. 2000). Rather, a petitioner must affirmatively prove actual prejudice, and the possibility that a petitioner suffered prejudice is insufficient to establish Strickland's prejudice prong. See Cooper v. Calderon, 255 F.3d 1104, 1109 (9ᵗʰ Cir. 2001) ("[A petitioner] must 'affirmatively prove prejudice.' ... This requires showing more than the possibility that he was prejudiced by counsel's errors; he must demonstrate that the errors actually prejudiced him.") (quoting Strickland, 466 U.S. at 693). However, the court need

not determine whether counsel's performance was deficient if the court can reject the claim of ineffectiveness based on the lack of prejudice. See Jackson, 211 F.3d at 1155 n.3 (the court may proceed directly to the prejudice prong).

To the extent a claim can be gleaned from Petitioner's various statements set forth in Ground Four, Petitioner has failed to establish a "substantial" claim of ineffective assistance of counsel. Arizona law specifically prohibits raising ineffective assistance of counsel claims on direct appeal. Thus, there can be no ineffective assistance of PCR counsel for failing to allege an appellate counsel's alleged ineffectiveness on direct appeal for failing to raise an ineffective assistance of trial counsel claim during Petitioner's direct appeal.

Petitioner fails to establish cause for the procedural default of Ground Four under Martinez. Ground Four is procedurally defaulted, and Petitioner has not established that any exception to procedural default applies.

**B.     Merits**

Pursuant to the AEDPA[4], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). This standard is "difficult to meet." Harrington v. Richter, 562 U.S. 86, 102 (2011). It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

---

[4] Antiterrorism and Effective Death Penalty Act of 1996.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

### 1.    Ground One

In Ground One, Petitioner contends the "trial court abused its discretion when it ruled that sufficient evidence existed that [Petitioner] threatened [the] officer in furtherance of criminal gang activity – one must be guilty beyond a reasonable doubt." Petitioner specifically argues that there was insufficient evidence that he threatened an officer in furtherance of criminal gang activity.

Petitioner presented his insufficient evidence claim on direct appeal. The Arizona Court of Appeals rejected the claim stating, in pertinent part:

> ¶ 10 Harm first argues the trial court erred in denying his motions for judgment of acquittal and new trial. Although Harm does not dispute having made numerous threats of violent retaliation by the Aryan Brotherhood against the officer and his family, he argues the State failed to establish that he was an actual member of the Aryan Brotherhood, or that he invoked the power of the Aryan Brotherhood with the intent to promote any interest beyond his own.
>
> *    *    *
>
> ¶ 12 First, actual membership in a criminal street gang is not an element of the charge of threatening or intimidating, and therefore need not be proven to secure a conviction. *See* A.R.S. § 13–1202(A)(3).
>
> ¶ 13 Second, intent may be proven by circumstantial evidence, as a defendant's state of mind "is seldom, if ever, susceptible of proof by direct evidence." *State v. Lester*, 11 Ariz.App. 408, 410, 464 P.2d 995, 997 (1970); *see also State v. Routhier*, 137 Ariz. 90, 99, 669 P.2d 68, 77 (1983) ("Criminal intent, being a state of mind, is shown by circumstantial evidence. Defendant's conduct and comments are evidence of his state of mind."). Harm's diatribe reflected knowledge of and support for the Aryan Brotherhood's white supremacist ideology. His lengthy and forceful verbal attack upon the black

police officer could have been interpreted by the jury as intending to promote those ideals and the reputation of the gang.

¶ 14 Sufficient evidence was submitted for the jury to reasonably conclude beyond a reasonable doubt that Harm's threats were made, at least in part, to promote the interests of the Aryan Brotherhood in gaining respect through intimidation. Accordingly, the trial court did not err in denying the motion for judgment of acquittal, or abuse its discretion in denying the motion for new trial.

Harm, 340 P.3d at 1114.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, (1970). On review for sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Petitioner is entitled to habeas relief only if the state court's decision on this matter was contrary to, or an unreasonable application of the Jackson standard. See 28 U.S.C. § 2254(d)(1); Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

Petitioner was convicted of threatening or intimidating "by word or conduct ... [t]o cause physical injury to another person ... in order to promote, further or assist in the interests of ... a criminal street gang." A.R.S. § 13–1202(A)(3). Despite Petitioner's apparent belief that his conviction required that he actually furthered gang activity, the statute requires only that he threatened in order to "promote, further, or assist" a criminal street gang. And, based on this record, there was sufficient evidence submitted for the jury to conclude beyond a reasonable doubt that Petitioner's threats were made to promote the interests of the Aryan Brotherhood. Indeed, the Arizona Court of Appeals identified key portions of evidence presented at trial supporting Petitioner's conviction – including statements that Petitioner made to the officer during his arrest and captured in a 47-minute audio recording, in which Petitioner stated:

I'm affiliated to the bone. I will have all my brotherhood brothers come to this neighborhood, and you'll pay the ultimate price.... This is going to start trouble with the A[ryan] B[rotherhood] in this town, brother and you ain't going to

like it and your superiors ain't going to like it.... I'm a known member of the AB. I'm going to have a council over this.... You want to be a punk n[_____] cop, there's going to be some brothers looking for a punk n[_____] cop in the next few days.... I'm good at what I do, bro. I'm good in my organization.... I'm going to have as much shit done to you in your life because of what you just did to me in mine.... Our shit reaches as far as yours does, bro.

The State's expert also testified stating that the number one goal of the Aryan Brotherhood is the promotion of fear and respect for the gang itself, and that members or non-members can promote the gang by word of mouth, taking action on behalf of the gang, and instilling fear in potential victims. Accordingly, based on the elements of the statute and the evidence presented at trial and submitted to the jury, the Court finds that the state court's determination was not contrary to, nor an unreasonable application of federal law, and as such, the Court will recommend that the claim asserted in Ground One be denied and dismissed.

### 2.    Ground Two

In Ground Two, Petitioner claims that double jeopardy attached to the "gang aggravator when the jury found [him] not guilty of assisting a criminal street gang." Petitioner asserts that he was found not guilty of "assisting a criminal street gang" and claims this is inconsistent with the verdict that he was guilty of "threatening and intimidating in order to assist, promote, or further the interests of a criminal street gang."

Petitioner presented his enhancement of sentence claim on direct appeal. The Arizona Court of Appeals rejected the claim stating:

A. The Acquitted Offense and the Statutory Enhancer Do Not Have Identical Elements.

¶ 16 For purposes of double jeopardy, separate statutory provisions "constitute the same offense if they are comprised of the same elements." *Siddle*, 202 Ariz. at 516, ¶ 10, 47 P.3d at 1154 (citing *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). To determine whether the two provisions constitute one offense, we look to see whether "'each provision requires proof of an additional fact that the other does not.'" *Id.* (quoting *Brown*, 432 U.S. at 166, 97 S.Ct. 2221). If so, the two are not the same offense. *Id.*; *see State v. Tinghitella*, 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971) (adopting "identical elements" test to determine whether act or omission results in double punishment).

¶ 17 Here, the enhancer applies to "any felony offense [committed] with the intent to promote, further or assist any criminal conduct by a criminal street

gang." A.R.S. § 13–714 (emphasis added). In contrast, the offense Harm was acquitted of penalizes commission of "any felony offense, whether completed or preparatory for the benefit of, at the direction of or in association with any criminal street gang." A.R.S. § 13–2321(B) (emphasis added). In the absence of a comma separating "preparatory" from "for the benefit of," we must read the singular, unitary provision, "preparatory for the benefit of," as a non-restrictive clause modifying "any felony offense." *See Pawn 1st, L.L.C. v. City of Phx.*, 231 Ariz. 309, 311, ¶ 16, 294 P.3d 147, 149 (App. 2013) ("The plain meaning of a statute 'will typically heed the commands of its punctuation.'") (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)). The plain meaning does not support an argument that "for the benefit of," as contained within A.R.S. § 13–2321(B), could form a substantive basis for conviction (i.e., action taken "for the benefit of" a criminal street gang).

¶ 18 It is clear that neither the words contained in the statutes, nor their application, is identical. On the one hand, A.R.S. § 13–2321(B) requires that any "assistance" to a criminal street gang through the commission of a crime occur at the direction of or in association with the gang. On the other hand, A.R.S. § 13–714 simply requires that the crime be committed "in order to promote, further or assist any criminal conduct" of a criminal street gang. The former implies some participation by the gang, while the latter addresses only the intent of the actor. Indeed, engaging in a felony at the direction of or in association with any criminal street gang is fundamentally different from engaging in that same act, without the requisite direction or association, based solely upon the actor's own intent to promote, further or assist criminal conduct. Effectively, a person can promote, further or assist a criminal street gang, without that conduct being at the direction of or in association with the gang.

¶ 19 Moreover, when the legislature chooses different words within a statutory scheme, we presume those distinctions are meaningful and evidence an intent to give a different meaning and consequence to the alternate language.[] *Egan v. Fridlund–Horne*, 221 Ariz. 229, 239, ¶ 37, 211 P.3d 1213, 1223 (App. 2009) (citing *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249–50, ¶ 8, 141 P.3d 422, 424–25 (App. 2006)); *see also State v. McDermott*, 208 Ariz. 332, 334–35, ¶ 5, 93 P.3d 532, 534–35 (App. 2004) ("[W]e ... presume that the legislature does not include statutory 'provisions which are redundant, ... [or] superfluous....'") (quoting *State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App. 1994)). Although the language of A.R.S. § 13–714 may be similar to that of A.R.S. § 13–2321(B), to adopt Harm's position would ignore the legislature's decision to use different words to describe different conduct at issue in each circumstance. Such an approach would run contrary to established principles of statutory interpretation. *Egan*, 221 Ariz. at 239, ¶ 37, 211 P.3d at 1223.

¶ 20 Applying the test adopted in *Tinghitella*, we conclude the elements of the acquitted offense and the statutory enhancer are not identical, and are therefore not the "same offense" for purposes of a double jeopardy challenge.

B. Application of the Statutory Enhancer is Consistent with the Crime for Which Harm Was Convicted.

¶ 21 Harm's conviction for threatening or intimidating reinforces our conclusion, as the charge for which Harm was convicted includes the identical

element that makes the statutory enhancer applicable. *Compare* A.R.S. § 13–1202(A)(3) (criminalizing threatening or intimidating "in order to promote, further or assist in the interests of or to cause, induce or solicit another person to participate in a criminal street gang") (emphasis added), with A.R.S. § 13–714 (enhancing sentence of a person "convicted of committing any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang") (emphasis added). It would be illogical to find Harm's sentence was improperly enhanced based upon an intent to "promote, further or assist" any criminal conduct of a criminal street gang where the jury, in the same proceeding, convicted Harm of a crime which required it to find that same intent. *See State v. Linsner*, 105 Ariz. 488, 491, 467 P.2d 238, 241 (1970) ("[A] jury verdict is conclusive.") (citing *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)).

¶ 22 Specifically, the trial court instructed the jury that the crime of threatening or intimidating "require[d] proof that [Harm] threatened or intimidated by word or conduct to cause physical injury to another person ... in order to promote, further or assist in the interest [of] or to cause, induce, or solicit another person to participate in a criminal street gang...." (Emphasis added). The jury was apparently able to distinguish "promote, further or assist" from "at the direction of or in association with," convicting Harm of the former act (and finding the State had proven the identical statutory enhancer) and acquitting him of the latter, without seeking further clarification or guidance from the court on the issue. The jury's consistent determinations thereby belie any argument that the statutes are indistinguishable or that Harm's acquittal for A.R.S. § 13–2321(B) is inconsistent with the express findings of the jury regarding Harm's intent.

C. No Double Jeopardy Violation Results from Use of the Statutory Enhancer.

¶ 23 Finally, even if we were to further entertain Harm's position, both the U.S. and Arizona Supreme Courts have held that a sentence enhancement does not offend double jeopardy. *United States v. Watts*, 519 U.S. 148, 154–55, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *see also State v. Bly*, 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980), *superseded by statute*, A.R.S. § 13–702, as recognized in *State v. Pitts*, 178 Ariz. 59, 63, 870 P.2d 1155, 1159 (App. 1993).[] The increase in punishment results from the manner in which the crime was committed; it is not additional punishment for a previous crime of which the defendant was not convicted. *Watts*, 519 U.S. at 154–55, 117 S.Ct. 633; *Bly*, 127 Ariz. at 373, 621 P.2d at 282 ("The punishment may be severe and it may be a single element of the crime which mandates the legislative decision to make probation unavailable and a minimum prison term mandatory, but that does not mean a defendant is being punished time and time again for a single act. It merely defines a single harsh punishment for a single severe crime.").

¶ 24 Additionally, although the judiciary is granted discretion in prescribing an appropriate punishment given the circumstances of a particular crime, it can only act within the limits set forth by the legislature. *Bly*, 127 Ariz. at 371–72, 621 P.2d at 280–81. Therefore, in situations where double jeopardy is alleged to result from the mechanics of sentencing, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also State v. Snyder*, 111 Ariz. 366, 367, 529 P.2d 1183, 1184 (1975) ("The rule of law is well established that where

... a sentence is clearly within the statutory limits provided for the offense, a reviewing court will not disturb the sentence unless there is a clear abuse of discretion.") (citing *State v. Rogers*, 109 Ariz. 55, 56, 505 P.2d 226, 227 (1973), and *State v. Fischer*, 108 Ariz. 325, 326, 498 P.2d 147, 148 (1972)).

¶ 25 Here, A.R.S. § 13–714 does not contain any language limiting its application or suggesting it may not operate independently from crimes committed "at the direction of or in association with" a criminal street gang. To the contrary, A.R.S. § 13–714 applies broadly by its terms to "[any] person who is convicted of committing any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang." A.R.S. § 13–714 (emphasis added). The legislature has simply meted out harsher penalties in circumstances involving crimes that provide recognition to or promotion of a criminal street gang.

¶ 26 Harm's conviction of a class 3 felony under A.R.S. § 13–1202(A)(3) qualifies as "any felony offense," and the jury consistently found, both in its verdict and at the aggravation stage, that the crime was committed with the "intent to promote, further or assist" a criminal street gang. Where, as here, a statutory sentence enhancer has been created, the consequence of its application cannot be said to constitute a greater punishment than that anticipated by the legislature. We reject any suggestion otherwise.

Harm, 340 P.3d at 1114-17.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that a person may not "be subject for the same offence to be twice put in jeopardy of life or limb." Double jeopardy bars multiple prosecutions and punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 717 (1969). In deciding whether a defendant has been tried and punished twice for the same offense, courts apply the "same-elements" test of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the court inquires "whether each offense contains an element not contained in the other." United States v. Dixon, 509 U.S. 688, 696, 703–04, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The "same-elements" test focuses on the statutory elements of the crime charged, not the factual evidence offered to secure a conviction. See Illinois v. Vitale, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Under the Blockburger test, if each offense contains an element not present in the other, they are not the same offense, and double jeopardy does not bar additional punishment and successive prosecution. See Dixon, 509 U.S. at 696.

- 19 -

The Court finds that the state court's determination was not contrary to, nor an unreasonable application of federal law. In order to obtain a conviction for assisting a criminal street gang, the state had to prove beyond a reasonable doubt that Petitioner "assist[ed] a criminal street gang by committing any felony offense, whether completed or preparatory for the benefit of, at the direction of or in association with any criminal street gang." A.R.S. § 13-2321(B). The specific element "for the benefit of, at the direction of or in association with" set forth in A.R.S. § 13-2321(B), is not contained in the statutory enhancer, which applies to "any felony offense [committed] with the intent to promote, further or assist any criminal conduct by a criminal street gang." A.R.S. § 13–714. As the appellate court noted, neither the words contained in the statutes, nor their application, is identical – as A.R.S. § 13–2321(B) requires engaging in a felony at the direction of or in association with any criminal street gang, and A.R.S. § 13–714 requires that the crime be committed "in order to promote, further or assist any criminal conduct" upon the actor's own intent. Thus, under the same-elements test, these statutes are not the same and do not violate the Double Jeopardy Clause. Moreover, the appellate court's additional reasoning for rejecting Petitioner's claim was consistent with federal law. The Court will recommend that the claim asserted in Ground Two be denied and dismissed.

### 3.    Ground Three

In Ground Three, Petitioner contends that he received ineffective assistance of counsel. Specifically, Petitioner claims that his attorney failed to (a) request a competency hearing, and (b) file a motion to suppress regarding alleged <u>Miranda</u> violations.[5]

Petitioner presented each of these claims in his PCR petition and petition for review to the Arizona Court of Appeals. (Exhs. X, Y, Z, AA, DD, EE, FF.)

The state court dismissed the PCR petition stating, in pertinent part:

---

[5] Related to Petitioner's claim alleging that his attorney failed to request a competency hearing, Petitioner generally complains that counsel was ineffective for failing to address his mental health issue, and in doing so, failed to notify the jury of his mental health history.

In the overall context, this court is unable to find any ineffective assistance of counsel at trial, whether this court relies upon its recall from the trial or upon the pleadings filed by Defendant. For his claim to be colorable, it would have to rise to the level of changing the verdict, if the claims were true.

Here, none of the assertions made by Defendant relating to the work of his counsel would have or even could have changed the jury's verdict had his attorney proceeded as he suggests in his petition. There is no diminished capacity defense available and the lion's share of the evidence at trial was from the lengthy recording of Defendant's behaviors following initial contact with law enforcement. Additionally, Defendant's attorney did raise questions about Defendant's erratic behavior when he cross examined the arresting officers. Therefore, the jury heard the factual evidence, even if a diminished capacity defense was not available. Further, this court spent appreciable time with Defendant in court and from that, notes that there would have been no viable mental capacity or Rule 11 claims.

Additionally, there are no other claims that would rise to the level required for a Rule 32 Petition to be considered. Lacking a colorable claim, the law requires that Defendant's petition be summarily denied.

(Exh. AA.)

Similarly, the Arizona Court of Appeals denied relief, stating:

¶ 3 ... Regarding the claims of error by the trial court, Harm could have raised these claims on direct appeal. Any claim a defendant could have raised on direct appeal is precluded. Ariz. R. Crim. P. ("Rule") 32.2(a). None of the exceptions under Rule 32.2(b) apply.

¶ 4 Regarding the claims of ineffective assistance of counsel, we deny relief because Harm has failed to present any colorable claims for relief. First, Harm failed to present a colorable claim that counsel should have sought a competency hearing. Harm has never offered any evidence that suggests he was unable to understand the proceedings against him or assist in his defense. *See State v. Amaya-Ruiz*,166 Ariz. 152, 162, 800 P.2d 1260, 1270 (1990) (addressing competency). We also note that the same judge who dismissed the petition for post-conviction relief presided over Harm's trial. In the minute entry dismissing the petition the court stated, "[T]his court spent appreciable time with Defendant in court and from that, notes that there would have been no viable mental capacity or Rule 11 claims."[] If Harm meant to argue competency in the context of his mental state at the time he committed the offense, "Arizona does not recognize a 'diminished capacity' defense" other than a guilty except insane defense. *State v. Lopez*, 234 Ariz. 465, 469, ¶ 21, 323 P.3d 748, 752 (App. 2014).

¶ 5 Second, Harm has failed to present a colorable claim that counsel should have filed a motion to suppress based on *Miranda*. Harm does not identify the specific inculpatory statements allegedly obtained in violation of *Miranda*, does not identify evidence that shows he made those statements during a custodial interrogation, does not explain if and/or when the trial court admitted those statements at trial, and does not direct us to any relevant portion of the record on review to support his claim. He has, therefore, failed to present a colorable claim for relief.

(Exh. FF.)

The Court reviews the following claims under the standards set forth in Strickland addressed above.

### a.      Counsel's failure to request a competency hearing

Petitioner argues that his counsel was ineffective for failing to request a competency hearing. Petitioner also generally alleges that counsel failed to address his mental health issue, thereby failing to apprise the jury of his mental health history.

The Court finds that Petitioner has not established deficient performance or prejudice. Although the exact parameters of Petitioner's claim are unclear, initially, the Court notes that "Arizona does not allow evidence of a defendant's mental disorder short of insanity either as an affirmative defense or to negate the mens rea element of a crime." State v. Mott, 931 P.2d 1046, 1051 (Ariz. 1997). Thus, to the extent Petitioner argues that counsel should have presented more evidence regarding his mental health history, a defendant cannot present evidence of mental disease or defect to show that he was incapable of forming a requisite mental state for a charged offense. See id. at 1050; Clark v. Arizona, 548 U.S. 735, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006) (Arizona's preclusion of diminished capacity evidence does not violate due process). And, Petitioner makes no statements, and the Court finds no evidence in the record, suggesting that he was insane at the time of the offense.

Despite this, counsel did raise questions about Petitioner's erratic behavior during cross-examination of the arresting officers (as discussed by the state court), and notably, during closing argument:

> MR. DeBRIGIDA: ... Does anybody here in this room have a doubt that my client was way out of his mind that night? How can you listen to the length of what he says, how long he went on , how many swings he went into, almost screaming at times at the officer and then having normal conversation with him about his tobacco does anybody here doubt that my client was not in his right mind that night?
>
> MR. SPONSEL: Objection, your Honor, facts not in evidence.
>
> THE COURT: Sustained.
>
> MR. DeBRIGIDA: Use your own common sense and make your own assessment based on the evidence of what you heard, the descriptions the

- 22 -

officers gave about what my client was wearing, what he wasn't wearing, what he was doing, the pacing back and forth trying to get into a medical building into the middle of the night that is clearly not open; leaving his shoes in one place and backpack in another. He doesn't remember where he left them and when he te1ls the officer where it was. The officer goes and it was not there. Is this somebody who has all the juice of an Aryan Brotherhood known member? The guy can't find his stinking shoes that night. The guy has no place to live, but he is down with the Aryan Brotherhood and this council is going to care about him getting arrested for a trespassing that night? It makes no sense.

Let's get back to making some sense of this case, shal1 we? Think about some of the ridiculous things my client says. This creates huge issues on the street. White boys in this neighborhood. The Defendant telling one officer and he kept saying to Officer Armour, I was pleasant with you, I was polite. The officers told us no, he wasn't pleasant. So even my client's perception of the way he was that night isn't right.

(Exh. D at 91-92.)

As to Petitioner's claim that counsel was ineffective for failing to request a competency hearing, the controlling Supreme Court precedent regarding competency is Dusky v. United States, 362 U.S. 402 (1960) where the Court held that a defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." Id. at 402. In determining whether a defendant is capable of understanding the proceedings and assisting counsel, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required ... ." Drope v. Missouri, 420 U.S. 162, 180 (1975).

"A claim that counsel was deficient for failing to move for a competency hearing will succeed only when there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." Hibbler v. Benedetti, 693 F.3d 1140, 1149–50 (9th Cir. 2012) (internal quotation marks and citations omitted).

Here, Petitioner does not offer any evidence suggesting that at the time of his trial he was not able to understand the proceedings or assist in his defense – nor was there any other

- 23 -

information available to counsel or the court creating a doubt as to Petitioner's competency to stand trial. Most of what Petitioner discusses in his habeas petition and reply relate to his alleged prior mental capacity at the time of the offense, yet he presents nothing to demonstrate that a competency evaluation would have revealed a mental disorder rendering him incompetent to stand trial. To the contrary, the record supports a finding that Petitioner was competent to stand trial and any request for a competency hearing would have been meritless. As noted by the state court, "this court spent appreciable time with Defendant in court and from that, notes that there would have been no viable mental capacity or Rule 11 claims."

Accordingly, Petitioner has not satisfied either prong of the Strickland test and, therefore, has not shown that he is entitled to relief. The state court's determination was not contrary to, nor an unreasonable application of federal law, and as such, the Court will recommend that this ineffective assistance claim be denied and dismissed.

### b. Counsel's failure to file a motion to suppress regarding alleged Miranda violations.

Petitioner argues that his counsel was ineffective for failing to file a motion to suppress regarding alleged Miranda violations. Petitioner states that counsel "never filed a motion to suppress Defendant's statements, gained illegally, with no Miranda ever given." He states that "Defendant Harm is clearly questioned by arresting officers regarding gangs, prison affiliations, etc. ... Failing to file a motion to suppress is [] clearly ineffective assistance of counsel."

Petitioner refers to the statements he made during the 47-minute "verbal tirade" – the majority of which did not involve any interrogation implicating Miranda. However, at one point during trial, the court discussed a portion of the recording wherein one officer asked, "how long you've been in AB?" And, Petitioner responded, "ever since I've been in prison in Arizona." In analyzing the statement, the court stated:

Up until [this point in the recording], and this is something that you told me early on in this whole thing was even the basis to why you told me to strike the voluntariness of the defendant's statements from the Preliminary Jury Instructions, you said there was no interrogation. This was just a rant that he

went on. What I just heard was an officer ask a very specific question that you're claiming is central to the case, which is how long you've been in AB, which I'm assuming stands for Aryan Brotherhood, to which he answered ever since I've been in prison in Arizona.

\*      \*      \*

I'm going to say this because I am so incredibly disturbed, but I'm not letting it get in the way. The idea of nobody filing a motion is – it is ridiculous that we are at this stage of the trial and we are addressing what is so clearly a pretrial issue. I'm going off of what I was told. What I was told by you was there was no reason for me to read to the jury the voluntariness of the defendant's statements. You said that. And your answer to me was that's because at no time was he considered – was he questioned. That's what you said. What you just played for me is a direct question and you were using that answer as evidence what is this criminal offense. It may have not been up until that moment evidence of the criminal street gang, but the question itself how long you've been in AB is a question.

(Exh. C at 63-65.)

After discussing the matter at length with counsel, the court concluded that Petitioner's response to the officer's question was inadmissible. (Exh. C at 89-90.) Assuming deficient performance in failing to file a motion to suppress, Petitioner was not prejudiced as the trial court suppressed the only statement that was in direct response to the officer's only question.

Other then his generalized and conclusory allegations, Petitioner has failed to identify any additional statements obtained pursuant to a custodial interrogation and in violation of Miranda. Accordingly, Petitioner has not satisfied the Strickland test and, therefore, has not shown that he is entitled to relief. The state court's determination was not contrary to, nor an unreasonable application of federal law, and as such, the Court will recommend that this ineffective assistance claim be denied and dismissed.

## CONCLUSION

Having determined that Ground Four is procedurally defaulted without an excuse for the default, and Grounds One, Two, and Three fail on the merits, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

- 25 -

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of June, 2019.

Michelle H. Burns
United States Magistrate Judge